## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

EZEKIEL ADAIR,

       *Plaintiff,*

vs.

       Case No. 14-1174-EFM-KGG

WICHITA PUBLIC SCHOOLS UNIFIED
SCHOOL DISTRICT No. 259, ET AL.,

       *Defendants.*

## MEMORANDUM AND ORDER

Plaintiff Ezekiel Adair brings suit against his former employer, Wichita Public Schools Unified School District 259 ("USD 259"), as well as several employees of USD 259. He asserts defamation and employment discrimination claims. Defendants filed a Motion to Dismiss (Doc. 19). For the reasons stated below, Defendants' motion is granted in part and denied in part.

## I.      Factual and Procedural Background[1]

*Pro se* Plaintiff Ezekiel Adair filed a form Complaint, with an attached eight-page typed complaint, against Defendant USD 259; Leroy Parks, Principal of Wichita Southeast High School; and Christopher Asmussen, Teacher and Head Football Coach of Wichita Southeast High School. In Plaintiff's "individual statement" in his Complaint, he contends that Defendants

---

[1] The following facts are taken from Plaintiff's Complaint.

targeted and harassed him. Plaintiff asserts that when he tried to work and express his feelings about Defendants' behaviors, he was retaliated against and wrongfully terminated and demoted. After Plaintiff's employment with Defendant USD 259, he claims that there was continued slander and defamation.  Plaintiff also states that Defendants created a hostile work environment that affected his health and wellness.

In Plaintiff's "factual allegations," he claims that USD 259 hired him as para-educator at Wilbur Middle School in early January 2012.  In early January 2013, Plaintiff was hired by USD 259 at Southeast High School as ISSR Coordinator and an assistant coach. During the summer of 2013, Plaintiff alleges that he was "exposed to Un-intentional discrimination."[2]

On September 6, 2013, Plaintiff states that during a varsity football game, he was "cussed and yelled at by head coach Asmussen" and an assistant coach. This incident occurred in front of football players, parents, and staff. On September 11, 2013, Plaintiff contends that during a meeting with Mr. Parks, he verbally abused Plaintiff and scolded him about his "accountability, job performance, honesty, and trust worthiness."[3] Plaintiff claims that he was given his first suspension at the end of this meeting which was against USD 259 policies and procedures.

On September 12, 2013, Plaintiff contends that Coach Asmussen reduced Plaintiff's duties. On September 16, 2013, Plaintiff met with Mr. Parks about a letter that Plaintiff wrote him.  In this letter, Plaintiff alleges that he "had coaching concerns (racial slurs, comments, isolation and discrimination)."[4] Plaintiff believed that Mr. Parks stepped out of his professional

---

[2] *Id.* at p. 13, ¶ 10.

[3] *Id.* at p. 14, ¶ 14.

[4] *Id.* at pp. 14-15, ¶ 16.

boundaries and that he "defame[d] and slander[ed] plaintiff in a document he submitted changing my statements."[5] He also alleges that Mr. Parks did not address his concerns in the letter.

On September 27, 2013, Plaintiff met with Mr. Parks about documentation that had been submitted by Ms. Brown, the assistant principal.  Plaintiff claims that this documentation was false and that Mr. Parks continued his verbal abuse by yelling at him.  Plaintiff states that Mr. Parks seized Plaintiff's school keys and placed him on suspension.   Southeast High School security, as well as the Wichita Police Department, was called.  The Wichita Police Department escorted Plaintiff off the premises in front of students and co-workers. Plaintiff then spoke with his union representative about harassment charges.

On October 1, 2013, Plaintiff met with Mr. Parks, Mr. Fulton, Ms. Brown, and a union representative. Mr. Parks submitted a document and Plaintiff disagreed with certain information in that document, including statements that made it seem as though Plaintiff was a rude and defiant employee and that Plaintiff was insubordinate and argumentative on September 27. Plaintiff responded in writing to Mr. Parks' documentation.

On October 11, 2013, the parties met for the last time.  Plaintiff states that Mr. Parks apologized for his behavior but inexplicably still placed Plaintiff on a ninety day probationary period, with the ability to be terminated for work-related issues. Plaintiff returned to work on October 15 and states that it was a chaotic and hostile day because teachers and students questioned his leave of absence.  Plaintiff claims this environment continued for the next several weeks.  In addition, Plaintiff asserts that he heard that his coaching position was filled by other individuals.

---

[5] *Id.*

Plaintiff resigned on October 25, 2013. His last day of employment was November 8, 2013. Plaintiff contends that Mr. Parks gave negative information to the Kansas Department of Unemployment, as well as to potential employers, after his departure.

Plaintiff filed an EEOC charge on May 20, 2014, alleging discrimination on the basis of race, color, and retaliation. Plaintiff's Dismissal and Notice of Rights letter is dated May 22, 2014. Plaintiff filed suit on June 16, 2014. In his Complaint, he appears to assert two causes of action. He alleges as the first cause of action:

> The defendant is claimed to have violated school district policies and procedures with the mistreatment of the plaintiff. The defendant submitted false documents, untrue statements and would go as far as defaming the character of the plaintiff. The defendant demoted, bullied, ridiculed, harassed and humiliated the plaintiff, in which, causing emotional stress and physical damage to the plaintiff.[6]

His second cause of action asserts:

> The plaintiff was subdued to racial harassment, retaliation and isolation. Defendant plotted against the plaintiff and conspired to fire by creating a hostile work environment. Defendant displayed a lack of clarity as to job functions and responsibilities. Due to defendant's recommendations and slander, the plaintiff as a conflict of interest has yet to accept or start further employment and business relationships with other school district entities and persons. Defendant on multiple occasions tried to damage the plaintiff's reputation, work performance and violated employee rights.[7]

Defendants have now filed a Motion to Dismiss (Doc. 19). They assert that Plaintiff fails to state a claim for relief.[8] The Court addresses this motion below.

---

[6] Complaint, Doc. 1, p. 12.

[7] *Id.* at p. 18.

[8] Discovery has proceeded over the past several months, and a Pretrial Order was entered on April 3, 2015. Thus, this document now governs the case. Plaintiff's contentions in that Order are similar to the contentions in the Complaint, as set forth above.

-4-

## II.      Legal Standard

Under Rule 12(b)(6), a defendant may move for dismissal of any claim for which the plaintiff has failed to state a claim upon which relief can be granted.[9]  Upon such motion, the court must decide "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.' "[10]  A claim is facially plausible if the plaintiff pleads facts sufficient for the court to reasonably infer that the defendant is liable for the alleged misconduct.[11]  The plausibility standard reflects the requirement in Rule 8 that pleadings provide defendants with fair notice of the nature of the claims as well as the grounds upon which each claim rests.[12]  Under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint, but need not afford such a presumption to legal conclusions.[13]  Viewing the complaint in this manner, the court must decide whether the plaintiff's allegations give rise to more than speculative possibilities.[14]  If the allegations in the complaint are "so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.' "[15]

---

[9] Fed. R. Civ. P. 12(b)(6).

[10] *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009).

[11] *Iqbal*, 566 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

[12] *See Robbins v. Okla.*, 519 F.3d 1242, 1248 (10th Cir. 2008) (internal citations omitted); *see also* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain a short and plain statement of the claim showing that the pleader is entitled to relief.").

[13] *Iqbal*, 556 U.S. at 678-79.

[14] *See id.* at 678. ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.").

[15] *Robbins*, 519 F.3d at 1247 (quoting *Twombly*, 550 U.S. at 570).

Because Plaintiff is pursuing this action *pro se*, the Court must be mindful of additional considerations. "A *pro se* litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers."[16] The Court, however, will not "assume the role of advocate for the *pro se* litigant."[17]

## III.    Analysis

Plaintiff's first claim appears to be one for defamation. He states that Defendants submitted false documents and untrue statements and gave negative information about Plaintiff. Defamation includes both libel and slander.[18] "The elements of defamation include false and defamatory words, communicated to a third person, which results in harm to the reputation of the person defamed."[19] In Kansas, "damage to one's reputation is the essence and gravamen of an action for defamation. Unless injury to reputation is shown, plaintiff has not established a valid claim for defamation, by either libel or slander, under our law."[20]

Defendants argue that Plaintiff fails to state a claim because he does not allege to whom the derogatory remarks were made and has not alleged damage to his reputation. However, in construing the Complaint liberally, as the Court must, it appears as though Plaintiff alleges that these alleged false words were communicated to the Kansas Department of Unemployment and

---

[16] *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[17] *Id.* (emphasis added)

[18] *Wright v. Bachmurski*, 29 Kan. App. 2d 595, 600, 29 P.3d 979, 984 (2001).

[19] *Droge v. Rempel*, 39 Kan. App. 2d 455, 459, 180 P.3d 1094, 1097 (2008).

[20] *Gobin v. Globe Publ'g Co.*, 232 Kan. 1, 6, 649 P.2d 1239, 1243 (1982).

also to potential employers.[21]   In addition, Plaintiff states in the Complaint that he suffered damages for loss of reputation. Thus, Plaintiff states a claim for defamation.

With regard to Plaintiff's "second cause of action," it appears that he includes several claims, including racial harassment, hostile environment, and retaliation. Plaintiff does not address whether he pursues these claims under Title VII or 42 U.S.C. § 1981. He did, however, file an EEOC charge and this fact would seem to indicate that he may be proceeding, at least in part, under Title VII. Defendants, however, only address Plaintiff's claim under § 1981, and Plaintiff does not assert otherwise in his response. Thus, for purposes of this Order, the Court will proceed under § 1981.[22]

"Under § 1981, a prima facie case of racial harassment/hostile work environment requires [a plaintiff] to show, under the totality of the circumstances (1) the harassment was pervasive of severe enough to alter the terms, conditions, or privilege of employment, and (2) the harassment was racial or stemmed from racial animus."[23] "General harassment if not racial . . . is not actionable."[24] The workplace must be "permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."[25]   Furthermore, race must be a factor in the alleged

---

[21] Although Defendants may have the defense of privilege or truth, that issue is not currently before the Court.

[22] Generally, there is no real distinction in Title VII or § 1981 claims so long as Plaintiff has exhausted his administrative remedies for his Title VII claim. *See Davis v. Unified Sch. Dist.* 500, 750 F.3d 1168, 1170 (10th Cir. 2014) (stating that to prove a violation of Title VII or 42 U.S.C. § 1981, the standards are the same).

[23] *Mitchell v. City and Cnty. of Denver*, 112 F. App'x 662, 671 (10th Cir. 2004) (quotation marks and citation omitted).

[24] *Bolden v. PRC Inc.*, 43 F.3d 545, 551 (10th Cir. 1994).

[25] *Sandoval v. City of Boulder, Colo.,* 388 F. 3d 1312, 1327 (10th Cir. 2004).

harassment.[26] Defendants contend that Plaintiff only mentions race once in the Complaint and does not expound on the alleged racial harassment. In addition, Defendants argue that Plaintiff does not allege frequent or severe discriminatory conduct based on Plaintiff's race that unreasonably interfered with Plaintiff's working environment. The Court agrees. Plaintiff only references race one time in his Complaint stating that he told Mr. Parks about coaching concerns regarding racial slurs. And although Plaintiff alleges a few instances of "verbal abuse" and harassment, there are no factual allegations that any of this conduct related to Plaintiff's race. The Complaint wholly lacks of any allegations or instances indicating harassment or a hostile environment on the basis of Plaintiff's race. Thus, Plaintiff fails to state a racial harassment claim or hostile environment claim.

Plaintiff also brings a claim for retaliation. Defendants do not specifically address Plaintiff's retaliation claim. Instead, they simply include it under Plaintiff's racial harassment claim.[27] And while one allegation related to race may be insufficient to state a claim for racial harassment or hostile environment, the same cannot be said about Plaintiff's retaliation claim. To state a prima face case for retaliation, a plaintiff must show "(1) that he engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action."[28] In viewing the Complaint liberally, Plaintiff states that he was subject to derogatory comments about his race in the summer of 2013, and he complained to

---

[26] *Id.*

[27] The Court notes that Plaintiff checked the box in his EEOC Charge indicating that he brought a retaliation claim.

[28] *Somoza v. Univ. of Denver,* 513 F.3d 1206, 1212 (10th Cir. 2008) (citation omitted).

management about those racial comments sometime in September. Plaintiff claims that very shortly after informing management about these remarks, he was suspended and his coaching duties were reduced.  In addition, Plaintiff alleges that within the next month, he was no longer employed by Defendants.[29] These allegations are sufficient to state a claim for retaliation.

In sum, the Court grants in part and denies in part Defendants' Motion to Dismiss.  The Court dismisses Plaintiff's racial harassment and hostile environment claims. Plaintiff's defamation and retaliation claims remain.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss (Doc. 19) is hereby **GRANTED IN PART** and **DENIED IN PART**.

**IT IS SO ORDERED**.

Dated this 22nd day of April, 2015.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE

---

[29] At this stage, the circumstances surrounding Plaintiff's departure have to be viewed in the light most favorable to him.  Plaintiff alleges both that he resigned and that he was forced to resign.  Constructive discharge is an adverse employment action for purposes of a retaliation claim. *Fischer v. Forestwood Co., Inc.,* 525 F.3d 972, 979 (10th Cir. 2008). Thus, at this time, the Court must consider his termination as an adverse employment action. The burden, however, to demonstrate constructive discharge is substantial as a plaintiff has to demonstrate "working conditions so intolerable that a reasonable person in the employee's position would feel forced to resign." *Id.* at 980 (citations omitted).